LANCE R. BISHOP,

                          Petitioner,

    -vs-                                  **No. 6:15-CV-06506(MAT)**
                                       **DECISION AND ORDER**
D. UHLER,

                          Respondent.

## I. Introduction

Proceeding *pro se*, Lance R. Bishop ("Petitioner") instituted this proceeding pursuant to 28 U.S.C. § 2254, alleging that he is being unlawfully detained in Respondent's custody. Petitioner is presently incarcerated as the result of a judgment of conviction entered against him in New York State Monroe County Court (Keenan, J.), following his guilty plea to one count of first-degree manslaughter.

## II. Factual Background and Procedural History

The conviction here at issue stems from the shooting death of Kenneth Robinson-Brown, whom Petitioner knew as "Kenny," on September 27, 2008, in the City of Rochester. Petitioner was alleged to have intentionally shot Robinson-Brown three times, killing him. A Monroe County grand jury indicted Petitioner for Murder in the Second Degree (intentional murder) under New York Penal Law ("P.L.") § 125.25(1)); Criminal Possession of a Weapon in the Second Degree (possession of a loaded firearm outside of home or business) under P.L. § 265.03(3)); and Criminal Possession of a

Weapon in the Third Degree (possession of a weapon after conviction of a crime) under P.L. § 265.02(1)).

Just prior to the commencement of Petitioner's trial, the parties reached an agreement pursuant to which Petitioner would plead guilty to Manslaughter in the First Degree in satisfaction of the indictment, waive his right to appeal, and receive a determinate sentence of between 20 and 25 years' imprisonment, plus 5 years of post-release supervision ("PRS"). On May 8, 2009, Petitioner pled guilty before the County Court, which sentenced him to 23 years' imprisonment plus 5 years' PRS.

Petitioner pursued a direct appeal to the Appellate Division, Fourth Department, of New York State Supreme Court, which unanimously affirmed the conviction. *People v. Bishop*, 115 A.D.3d 1243 (4th Dep't 2014). The New York Court of Appeals denied leave to appeal on June 24, 2014, and denied reconsideration on December 3, 2014. *People v. Bishop*, 23 N.Y.3d 1018, *recons. denied*, 24 N.Y.3d 1082 (2014).

While his direct appeal was pending, Petitioner twice moved the County Court to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. The first motion raised no issues relevant to Petitioner's habeas claims. The second C.P.L. § 440.10 motion raised the issue of whether the County Court, during the plea colloquy, adequately inquired as to the existence

of a justification defense, but Petitioner withdrew the motion before it was decided.

After the Appellate Division affirmed the judgment, Petitioner filed three more motions to vacate in the County Court. While the third and fifth motions raised no issues relevant to the habeas petition, the fourth motion pressed a variation of the jurisdictional claim Petitioner had raised on direct appeal; this claim was found to be procedurally barred under N.Y. Crim. Proc. L. § 440.20(2) because it had been determined on the merits on direct appeal. Petitioner did not seek leave to appeal to the Appellate Division with regard to any of the five motions to vacate.

Petitioner then timely commenced this habeas proceeding asserting the following grounds for relief: (1) his guilty plea was not entered voluntarily and intelligently in violation of the Due Process Clause of the Fourteenth Amendment; and (2) the indictment was defective on several bases. Petitioner also sought permission to amend the petition and have it held in abeyance, which the Court (Siragusa, D.J.) denied. Respondent then answered the petition and interposed the affirmative defenses of exhaustion and procedural default. Respondent alternatively argued that none of Petitioner's claims has merit. Petitioner did not file a traverse.

For the reasons discussed below, the petition is dismissed.

**III. Discussion**

    **A.    Involuntariness of the Guilty Plea (Ground One)**

Petitioner contends that his guilty plea was involuntary because the County Court failed to inquire as to the existence of a justification defense, the County Court failed to ask whether the plea had been induced by improper promises, and the County Court did not explicitly advise Petitioner of the right to testify at trial and the right to remain silent.

    **1.    Failure of Court to Inquire as to Potential Justification Defense**

At the arraignment on October 16, 2008, the prosecution served notice of its intent to offer evidence at trial of a pre-arrest conversation between Petitioner and Investigator Glenn Weather of the Rochester Police Department concerning an injury sustained by Petitioner around the time of the shooting. The prosecutor indicated that

> Investigator Weather asked Mr. Bishop if he was okay and if he needed any medical attention, as he understood he had been quite injured. The defendant said he was okay, and that a private doctor had treated him. The defendant said that he would have to go to Strong Memorial to be treated for nerve damage, but was feeling okay.

(SCR.113; TR.3).[1]

---

[1] Numerals preceded by "SCR" refer to page citations in the volume of documents entitled "State Court Record" (Dkt #21-1), and numerals preceded by "TR" refer to page citations in the volume of documents entitled "Transcripts" (Dkt #21-2).

The subject of Petitioner's injuries arose later in connection with his pretrial bail application on February 11, 2009. At that time, trial counsel advised the County Court as follows:

> I think the Court's also aware [of] what I anticipate as a potential defense. Mr. Bishop, in fact, had sustained some injuries that evening. And I believe that several witnesses will attest to this being the product of a fight rather than a flat out assault of some sort.

(T.13-14). The prosecutor disagreed with this characterization, instead describing the shooting as "an actual execution of the victim" after the alleged struggle began. (T.14-15).

Petitioner claims that the County Court, at the plea hearing, should have revisited the issue of the injuries he sustained around the time of the incident to ensure that he was aware he was giving up a potential defense of justification. On direct appeal, the Appellate Division relied on New York's contemporaneous objection rule codified at C.P.L. § 470.05(2) in declining to address the claim's merits. *See Bishop*, 115 A.D.3d at 1244 (claim was not preserved for review as a result of failure to move to withdraw the plea or to vacate the judgment of conviction and, "[f]urthermore, '[n]othing in the plea allocution raised the possibility that [a justification defense was] applicable in this case, and defendant's contention therefore does not fall within the narrow exception to the preservation rule'") (brackets in original; quotations and citations omitted). Respondent argues that the Appellate Division's

reliance on C.P.L. § 470.05(2) was an adequate and independent state ground that renders the claim procedurally defaulted.

The Supreme Court has held that federal courts shall "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citations omitted). Here, the Appellate Division "actually . . . relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rest[ed] on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal quotations omitted). Therefore, the procedural bar clearly was "independent" of the merits of Petitioner's contention regarding the County Court's failure to inquire into a potential justification defense. *See id.* The fact that the Appellate Division ruled in the alternative on the merits of the claim does not alter this result. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (citation omitted). Furthermore, it was a fully "adequate" basis for the decision because it was "based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quotation omitted). "In New York, the 'firmly established and regularly followed rule,' for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw

the plea or to vacate the judgment of conviction." *Bennefield v. Kirkpatrick*, 741 F. Supp.2d 447, 453–54 (W.D.N.Y. 2010) (internal quotation omitted; citing, *inter alia*, *People v. Hilliard*, 39 A.D.3d 1021, 1022 (3d Dep't 2007) ("[D]efendant's assertion that his guilty plea was involuntarily entered is unpreserved for our review in light of his failure to move to withdraw the plea or vacate the judgment of conviction[.]")). Thus, the procedural bar relied upon by the Appellate Division is both independent and adequate and operates to bar habeas review of the merits of Petitioner's claim, unless he can show "cause" for the default and "prejudice" attributable thereto, *Murray v. Carrier*, 477 U.S. 478, 485 397 (1986), or demonstrate that the failure to consider the federal claim on habeas will result in a "fundamental miscarriage of justice," *id.* at 495 (quotation omitted).

Petitioner has not attempted to demonstrate cause and prejudice, or that a fundamental miscarriage of justice will occur if this Court declines to consider the claim. Indeed, the Court finds that prejudice is lacking because the Supreme Court has never held that it is constitutionally imperative that a defendant be aware of the defenses he is forgoing by pleading guilty. *See*, *e.g.*, *United States v. Broce*, 488 U.S. 563, 573 (1989) ("Our decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty."); *Brady v. United States*, 397 U.S. 742, 757 (1970) ("A defendant is

not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.").

### 2. Other Failures by Court to Inquire and Advise Petitioner

Respondent raises the defense of non-exhaustion with regard to Petitioner's second and third contentions regarding the involuntariness of his guilty plea, namely, that the County Court failed to ask whether he had been induced by improper promises to accept the plea and failed to explicitly advise him that he was giving up his right to testify and to remain silent. As Respondent points out, Petitioner has never fairly presented these claims in Federal constitutional terms to the State courts in the course of completing one round of the State's established appellate review process, thereby rendering these claims unexhausted. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

In the exhaustion context, "'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey,* 933 F.2d at 120. If the petitioner no longer has "remedies available" in the state courts under 28 U.S.C.

§ 2254(b), the federal courts "deem the claims exhausted." *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied,* 514 U.S. 1054 (1995). However, the State's barriers to relief that cause the Court to deem Petitioner's claims exhausted also renders them procedurally defaulted. *See*, *e.g.*, *Ramirez v. Att'y Gen'l of N.Y.,* 280 F.3d 87, 94 (2d Cir. 2001) ("Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law.") (citing *Grey*, 933 F.2d at 120–21).

Petitioner makes no showing of cause and prejudice or that this Court's failure to review the claim will result in a miscarriage of justice, i.e., that he is "actually innocent." *See, e.g., Schlup v. Delo*, 513 U.S. 298, 321 (1995). These claims are therefore dismissed as procedurally defaulted.

### B. Claims Relating to the Insufficiency of the Indictment (Ground Two)

#### 1. Overview

Petitioner's second ground in the petition challenges the sufficiency of the indictment as amended at the plea hearing, when the County Court reduced the first count of the indictment from murder to the lesser-included offense of first-degree manslaughter in order to effectuate the plea bargain. In so doing, the County Court misstated a digit of the statutory section number for

first-degree manslaughter. Specifically, the County Court stated that the indictment was amended to charge "Manslaughter in the 1st Degree in violation of . . . [P.L.] Section 120.20 subdivision 1." (TR.66). However, P.L. § 120.20(1) does not exist. First-degree manslaughter, as a lesser-included offense of second-degree murder, is defined in P.L. § 125.20(1), and therefore the County Court should have stated that the indictment was amended to charge a violation of P.L. § 125.20(1).

Petitioner contends that the County Court's misstatement of a digit of the statutory section number for first-degree manslaughter deprived it of jurisdiction to adjudicate his plea, failed to provide adequate notice of the charge against him, and foreclosed his ability to raise a double jeopardy defense in a future prosecution for the same offense. Respondent argues that Petitioner's due process challenge to the amended indictment is procedurally barred as a consequence of both his guilty plea and his waiver of appellate rights.

### 2. The Jurisdictional Claim

On direct appeal, the Appellate Division held that Petitioner's "challenge to the alleged amendment to the indictment" was "unavailing" because "[a]lthough the indictment was amended at the beginning of the plea proceeding to reflect the charge to which defendant ultimately pleaded guilty under the agreement," the "County Court's reference to an incorrect Penal Law provision,

while referring to the crime of manslaughter in the first degree by name, was akin to a mere 'misnomer in the designation of the crime charged,' which did "not create a jurisdictional defect[.]" *Bishop*, 115 A.D.3d at 1244 (quotation and citations omitted). The Appellate Division went on to find that the County Court's "misstatement" was simply "'an irregularity'" that did "not survive [his] plea of guilty[.]" *Id.* (quotation and citations omitted). The Appellate Division did not apply Federal law incorrectly in rejecting Petitioner's challenge to the indictment, as discussed further below.

It is well established that "[a] knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings." *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996) (citations omitted). In *United States v. Cotton,* 535 U.S. 625, 628 (2002), the Supreme Court addressed the jurisdictional effect of an inadequate indictment. At issue in *Cotton* was whether a district court could sentence defendants for possession of over 50 grams of cocaine under 18 U.S.C. § 841(b)(1)(A) when the indictment only charged a "measurable quantity" under § 841(b)(1)(C). The defendants in *Cotton* did not challenge the indictment at trial or sentencing, but the Fourth Circuit vacated their sentences under plain error review on the basis that an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional. The Supreme Court reversed,

explaining that jurisdiction refers to "the courts' statutory or constitutional power to adjudicate the case." *Id.* at 630 (quotation omitted; (citing *Lamar v. United States*, 240 U.S. 60, 65 (1916) ("Jurisdiction is a matter of power, and covers wrong as well as right decisions. . . . The objection that the indictment does not charge a crime against the United States goes only to the merits of the case."); *United States v. Williams*, 341 U.S. 58, 68-69 (1951) (stating that "[t]hough the trial court or an appellate court may conclude that the statute [charged in the indictment] is wholly unconstitutional, or that the facts stated in the indictment do not constitute a crime or are not proven, [the court] has proceeded with jurisdiction. . .")).

Based on the foregoing precedent, the Appellate Division did not err as a matter of Federal law in holding that the Court's misstatement in designating the crime charged did not give rise to a jurisdictional defect. Because any defect was non-jurisdictional, the Appellate Division correctly held that Petitioner's voluntary guilty plea precluded a challenge to the indictment. *See United States v. Rubin*, 743 F.3d 31, 35 (2d Cir. 2014) (by pleading guilty unconditionally to conspiracy to violate a Federal statute regarding online gambling, defendant waived his challenge that the indictment failed to state an offense because it alleged that he did nothing more than handle gambling funds, which was expressly excluded from the business of betting or wagering and thus

generally exempted from prosecution under the statute at issue; holding that "even assuming *arguendo* that Count One alleged a so-called 'non-offense,' [the defendant] Rubin's unconditional guilty plea precludes his argument on appeal").

### 3. The Due Process Lack-of-Notice and Double Jeopardy Claims

Respondent has construed Petitioner's remaining two claims based on the County Court's misstatement as raising challenges under the Fourteenth Amendment's Due Process Clause and the Fifth Amendment's guarantee against double jeopardy, as made applicable to the States through the Fourteenth Amendment. The Court agrees with Respondent's liberal interpretation of Petitioner's *pro se* submissions. *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quotation and citations omitted).

An indictment fulfills the notice function of the Due Process Clause by "contain[ing] the elements of the offense charged and fairly inform[ing] a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). An indictment also "enables [the defendant] him to plead an acquittal or conviction in bar of future prosecutions for the same offense[,]" *id.* (quotation omitted), pursuant to the Fifth Amendment's double jeopardy provision, which is incorporated in the

Fourteenth Amendment's Due Process Clause, *Benton v. Maryland,* 395 U.S. 784, 794 (1969). Respondent argues that because the alleged notice and double jeopardy errors in the amendment to the indictment are non-jurisdictional, they do not survive Petitioner's counseled and voluntary guilty plea. *See*, *e.g.*, *United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("[A] defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."). The Court notes that double jeopardy claims "are not automatically waived by the entry of a guilty plea." *Padilla v. Brady,* No. 13-CV-7908 JPO, 2015 WL 394090, at *2 (S.D.N.Y. Jan. 29, 2015) (citing *Menna v. New York*, 423 U.S. 61, 62 (1975) ("Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty.") (citing *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)). However, Petitioner here "raises a defective indictment claim; the double jeopardy clause is implicated only because protection from double jeopardy is one of the interests furthered by a sufficiently precise indictment[,]" *Padilla*, 2015 WL 394090, at *2, "[a]nd defective indictment claims do not fall within *Menna*'s exception to *Tollett*'s general rule that petitioners 'may only attack the voluntary and intelligent character of [a] guilty plea. . . .'" *Id.* (quoting *Tollett,* 411 U.S. at 267).

-14-

Petitioner therefore waived this challenge when he pleaded guilty. *Id.* (dismissing, as waived by voluntary guilty plea, habeas petitioner's claim that indictment failed to avoid a second indictment for the same offenses in violation of double jeopardy).

With regard to the lack-of-notice claim, the Court finds that this also was waived by Petitioner's entry of the guilty plea. During his plea colloquy, Petitioner knowingly, voluntarily, and intelligently allocuted to all of the elements of first-degree manslaughter as defined in P.L. § 125.20(1).[2] Specifically, in response to the prosecutor's questioning, Petitioner admitted that at about 8 a.m. on September 27, 2008, he was in the area of Alphonse Street and Hudson Avenue in the City of Rochester, with a person he knew as "Kenny." Petitioner admitted that he was carrying a loaded revolver, and that he shot Kenny three times with intent to cause serious physical injury to him, and thereby caused Kenny's death. (TR.66-68). The County Court indicated that it was satisfied with that allocution. When asked how he pled to "the reduced Manslaughter 1st Degree charge under court 1 of the indictment," Petitioner responded, "Guilty." The County Court then accepted the guilty plea.

---

[2] "A person is guilty of manslaughter in the first degree when: 1. [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person. . . ." N.Y. Penal Law § 125.20(1).

The Supreme Court explained in *Menna* that "[i]n most cases, factual guilt is a sufficient basis for the State's imposition of punishment." 423 U.S. at 63 n. 2. "A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." Petitioner's guilty plea, which followed an adequate factual allocution, "render[ed] irrelevant[,]" *id.*, the alleged lack of notice due to the County Court's misstatement in amending the indictment. In other words, even assuming the County Court created a constitutional error, it was "not logically inconsistent with the valid establishment of [Petitioner's] factual guilt[,]" *id.*, of the crime of first-degree manslaughter.

In sum, the State's establishment of Petitioner's factual guilt of the crime for which he was ultimately convicted and sentenced forecloses his ability to challenge the County Court's mistaken reference, prior to the entry of the guilty plea, to a non-existent section of New York's Penal Law. *Schwartz v. Connell*, No. 05 CIV. 10305(RPP), 2006 WL 3549660, at *4 (S.D.N.Y. Dec. 6, 2006) ("Petitioner's claim is that the indictment was not specific enough to alert him of the acts with which he was charged. His guilty plea, however, established factual guilt rendering irrelevant the sufficiency of the charging instrument.").

## IV. Conclusion

For the foregoing reasons, Petitioner's request for a writ of habeas corpus is denied, and the petition (Dkt #1) is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right[,]" 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue. The Clerk of Court is directed to close this case and mail a copy of this Decision and Order to Petitioner.

**SO ORDERED.**

S/Michael A. Telesca

_____
    HON. MICHAEL A. TELESCA
    United States District Judge

Dated:   October 25, 2017
         Rochester, New York.